59 F.3d 165
NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 Honiss W. CANE, Jr., Plaintiff-Appellee,
v.
WORCESTER COUNTY, Maryland; George M. Hurley; John E.
Bloxom; Reginald T. Hancock; Floyd F. Bassett;
Jeanne Lynch, Members, Worcester County
Board of Commissioners,
Defendants-Appellants,
and
George H. DRYDEN; Hinson Finney; Mark Frostrom, Defendants.
UNITED STATES of America; Center for Voting and Democracy;
Republican National Committee, Amici Curiae.
Honiss W. CANE, Jr., Plaintiff-Appellant,
v.
WORCESTER COUNTY, Maryland; George M. Hurley; John E.
Bloxom; Reginald T. Hancock, Floyd F. Bassett;
Jeanne Lynch, Members, Worcester County
Board of Commissioners,
Defendants-Appellees,
and
George H. DRYDEN; Hinson Finney; Mark Frostrom, Defendants.
UNITED STATES of America; Center for Voting and Democracy;
Republican National Committee, Amici Curiae.
 Nos. 95-1122, 95-1688.
 United States Court of Appeals, Fourth Circuit.
 June 16, 1995.
 
 Philip Antonio Owens, Appellant Pro Se.
 ARGUED: Benjamin E. Griffith, GRIFFITH & GRIFFITH, Cleveland, MS, for Appellants. Charles Christopher Brown, BROWN, GOLDSTEIN & LEVY, Baltimore, Maryland, for Appellee. ON BRIEF: Edward H. Hammond, Jr., WILLIAMS, HAMMOND, MOORE, SHOCKLEY & HARRISON, P.A., Ocean City, Maryland, for Appellants. Deborah A. Jeon, AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF MARYLAND, Centreville, Maryland, for Appellee. Deval A. Patrick, Assistant Attorney General, Steven H. Rosenbaum, Miriam R. Eisenstein, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Amicus Curiae United States; Pamela Karlan, Charlottesville, Virginia; Edward Still, Birmingham, Alabama, for Amicus Curiae Center for Voting and Democracy.
 Sandra Jane Hairston, Asst. United States Attorney, Greensboro, North Carolina, for Appellee.
 Before WIDENER and NIEMEYER, Circuit Judges, and PHILLIPS, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Presently before us are appeals from the judgment of the district court imposing a remedial plan for electing members to the Worcester County, Maryland, Board of Commissioners and ordering a general election under this plan in November 1995. We modify the decision in part and remand with instructions.
 
 I.
 
 2
 Plaintiffs brought this action in November 1992, alleging that the at-large system employed for electing County Commissioners violated Sec. 2 of the Voting Rights Act of 1965, as amended June 29, 1982. See 42 U.S.C.A. Sec. 1973 (West 1994). Following a bench trial, the district court ruled that the at-large electoral scheme violated Sec. 2 by impermissibly diluting the votes of African-Americans. Specifically, the district court found that Plaintiffs had carried their burden of demonstrating that the African-American voters of the County were sufficiently large and geographically compact to constitute a majority in a single-member district and were politically cohesive; that the majority voted sufficiently as a bloc usually to defeat the candidate preferred by the minority; and that, based on the totality of the circumstances, the system for electing County Commissioners interacted with past and present discrimination to deprive the AfricanAmerican voters of the same opportunity as other members of the electorate to participate in the political process and to elect representatives of their choice. See Cane v. Worcester County, Md., 840 F.Supp. 1081 (D. Md.1994).
 
 
 3
 The district court then requested that the County propose a remedial plan. The plan suggested by the County was the one it had adopted during the pendency of this action in the district court, and was virtually identical to the electoral scheme held by the district court to be violative of Sec. 2. Concluding that this plan was inadequate because it was violative of Sec. 2, the district court ordered that the County implement a system of cumulative voting. See Cane v. Worcester County, Md., 847 F.Supp. 369 (D. Md.1994).
 
 
 4
 Last year, in the County's appeal from this decision, we affirmed as not clearly erroneous the ruling of the district court that the at-large electoral system violated Sec. 2. However, we vacated the cumulative voting scheme crafted and ordered by the district court as a remedy for the Sec. 2 violation and remanded. We concluded that because the district court, after finding the plan then in effect to be in violation of Sec. 2, had immediately ordered the implementation of a cumulative voting scheme, it had deprived the County of an adequate opportunity to submit a remedial plan. Moreover, we held that the district court had failed to defer appropriately to the legislative preferences expressed by the County for its voting scheme. See Cane v. Worcester County, Md., 35 F.3d 921 (4th Cir.1994), cert. denied, 115 S.Ct. 1097 (1995).
 
 
 5
 On remand, the district court afforded the County another opportunity to propose a remedial plan, and the County offered three plans. The plan that was the principal focus of the proceedings below divided the County into five single-member districts in which candidates ran head-to-head for election among only the voters of their district in both the primary and general elections. Although none of the districts created by this plan would contain a majority AfricanAmerican population, the County maintained that the plan remedied the Sec. 2 violation because African-American voters would possess a "functional majority" in District 3, where the African-American voting age population was 44.68%. This is so, the County maintained, because with its projected white crossover vote, African-Americans in District 3 typically could elect the candidate of their choice. The district court noted that to remedy a vote dilution violation, the minority generally is given a super-majority and that no remedial plan relying upon projected white crossover voting had ever been approved. However, the court concluded that even if it were proper to consider projected white crossover vote in determining the adequacy of the proposed remedial plan, the projected level of white crossover voting would not provide African-American voters with a reasonable opportunity to elect their preferred candidate.[1]
 
 
 6
 Having held that none of the remedial plans offered by the County were acceptable, and having rejected the plan proposed by Plaintiffs that offered a 62% African-American voting age population in one of five single-member districts, the district court again fashioned its own remedy. It ruled that primary elections would be conducted using the electoral districts submitted in the County's second proposed remedial plan and that the general election would be conducted on a countywide basis using cumulative voting. The court further ordered that a general election under the new plan be conducted no later than November 7, 1995. See Cane v. Worcester County, Md., 874 F.Supp. 687 (D. Md.1995); Cane v. Worcester County, Md., 874 F.Supp. 695 (D. Md.1995).
 
 II.
 
 7
 At oral argument, all parties urged that we reject the cumulative voting scheme imposed by the district court and agreed that the plan imposed by the district court should be vacated. However, the parties disagree over the appropriate course on remand.
 
 
 8
 The County first asserts that the second proposed remedial plan it submitted was adequate and that we should order the district court to implement it. We have no difficulty in rejecting this assertion and affirming on the reasoning of the district court that this plan is violative of Sec. 2.
 
 
 9
 The County next claims that we should remand with instructions that it be given an additional 90 days in which to attempt to formulate a new plan. It maintains that this alternative relief is appropriate because it was not given an adequate amount of time in which to develop a remedial plan since the district court ordered that it submit a plan within ten days after this court denied the County's petition for rehearing and suggestion for rehearing en banc.
 
 
 10
 The County has been given more than a sufficient opportunity to submit a remedial plan that would satisfy Sec. 2. The district court requested that the County provide a remedial plan in January 1994 during the initial proceedings below, and the County was given another opportunity to submit a remedial plan following our prior remand. However, in the nearly 18 months following the determination of the district court that the at-large electoral scheme was violative of Sec. 2, the County has failed to propose any acceptable remedy. Moreover, the County does not represent to this court that an electoral plan could be formulated that would be acceptable to the County and that would remedy the violation. Rather, despite the fact that it has taken no steps toward developing such a plan during the five months since the district court ruled on remand, it requests that this court remand once again so that it may have yet an additional 90 days in which to attempt to do so.[2] Such a remand would inevitably delay the elections scheduled for November and is unwarranted in light of the County's ample opportunities to advance an acceptable remedial plan and its failure to offer any indication that such a remand would produce an acceptable remedial plan. We therefore decline the County's invitation.
 
 
 11
 Plaintiffs assert that because all of the parties are in agreement that the cumulative voting scheme imposed by the district court is unacceptable and because none of the remedial plans offered by the County are adequate, we should instruct the district court to impose the single-member district plan they submitted on remand. Although this plan satisfied several of the County's expressed legislative judgments--it guaranteed representation from throughout the County and provided African-American voters a fair and reasonable opportunity to elect candidates of their choice--the County opposed the plan because it divided into different districts the residents of three municipalities--a result the County sought to avoid. Alternatively, Plaintiffs request that we instruct the district court to adopt their alternative plan, which adequately remedies the Sec. 2 violation, guarantees representation from throughout the County, and is closer to satisfying all of the legislative goals expressed by the County because it divides the residents of only two municipalities into different districts.[3]
 
 
 12
 The district court concluded in January of 1994 that the scheme for electing members to the Worcester County Board of Commissioners diluted the votes of African-American voters in violation of Sec. 2 of the Voting Rights Act. Despite the affirmance of that decision by this court nearly one year ago, the African-American voters of Worcester County still have not been provided with a remedy for the violation, and the Commissioners elected under the impermissible electoral scheme continue to hold over in office. We are loath to again post pone the long-awaited November general election[4] and are convinced that Plaintiffs' alternative plan provides an adequate remedy for the Sec. 2 violation and corresponds most closely to the legislative goals expressed by the County. Accordingly, we remand to the district court with instructions to direct immediate implementation of Plaintiffs' alternative plan so that the general election scheduled for November 1995 may proceed as scheduled. The mandate shall issue forthwith.
 
 
 13
 AFFIRMED IN PART; VACATED IN PART; AND REMANDED WITH INSTRUCTIONS
 
 
 
 [1]
 The first plan submitted by the County on remand was, with some modifications of district boundaries, essentially the same as the County's original at-large scheme, and the district court properly rejected it as violative of Sec. 2. The third plan submitted by the County was similar to the one described above (second plan), except that modifications of district boundaries resulted in African-Americans comprising only 33.6% of the voting age population in the district with the largest minority population; the district court rejected this plan on the same grounds that it rejected the County's second proposed plan. On appeal, the County does not seriously contend that either of these plans is viable
 
 
 [2]
 During oral argument in July 1994 in the first appeal, the County sought the opportunity to present the district court with a single-member district plan. The County certainly cannot assert that it had no reason to believe that it was appropriate to attempt to develop such a plan between September 16, when we remanded to the district court and thus afforded the County that opportunity, and October 12, when this court denied the petition for rehearing and suggestion for rehearing en banc
 
 
 [3]
 Plaintiffs refer to the plan set forth on page 75 of the Joint Appendix submitted to this court in the first appeal as its alternative plan
 
 
 [4]
 The deadline by which candidates must file to run is July 3, 1995